# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,  )
  *ex rel.* CHRIS HOLDEN   and  )
    MARYJANE BUNORA,  )
      )  **FILED IN CAMERA**
    Plaintiffs,  )  **AND UNDER SEAL**
      )
    v.  )
      )  CASE NO.  **CIV-ZLOCH**
LABORATORY CORPORATION OF  )
  AMERICA,  )  **96 - 6272**
  a/k/a NATIONAL HEALTH LABORATORIES )
   INCORPORATED,   and  )
LABORATORY CORPORATION OF  )
  AMERICA HOLDINGS,  )
  a/k/a NATIONAL HEALTH LABORATORIES )  MAGISTRATE
  HOLDINGS, INC.,  )  SELTZER
      )
    Defendants  )

FILED by ___ D.C.
96 MAR 13 PM 12: 40
CARLOS JUENKE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT.L.

## COMPLAINT

### Preliminary Statement

This Complaint is based upon a scheme conducted by the Defendants, the LABORATORY

CORPORATION OF AMERICA, formerly known as NATIONAL HEALTH LABORATORIES

INCORPORATED, and its holding company, the LABORATORY CORPORATION OF AMERICA

HOLDINGS, formerly known as NATIONAL HEALTH LABORATORIES HOLDINGS, INC., to

defraud the United States of more than one hundred million dollars ($100,000,000) in the operation,

administration, and supervision of the Medicare health insurance program, maintained by the United



States Department of Health and Human Services. The Defendants defrauded the United States by filing false claims with the Medicare program pertaining to the taking of blood and other specimen samples from Medicare beneficiaries residing in nursing homes and other health care facilities. Under these claims, the Defendants billed Medicare for mileage supposedly incurred by the corporations for sending trained technicians to collect such samples and to return these samples to the Defendants' laboratories. These claims were false for reasons which included: (a) the Defendant corporations stated that they incurred full, round trip mileage for each beneficiary residing at a single nursing home or other facility, whereas they incurred only prorated mileage for each beneficiary residing at such facility; (b) the Defendant corporations stated that they incurred travel expenses for all such mileage, whereas the Defendants incurred no expenses for such mileage for those technicians whom they employed as independent contractors; and (c) the Defendant corporations stated that all of the samples for which they submitted claims were taken from Medicare beneficiaries who were either homebound or nursing home bound, whereas a portion of the samples for which they submitted claims were taken from beneficiaries who were neither homebound nor nursing home bound.

Plaintiffs, Chris Holden and Maryjane Bunora, through their undersigned counsel, acting on behalf of and in the name of the United States of America, bring this civil action under the *qui tam* provisions of the False Claims Act; and hereby allege the following:

### Jurisdiction and Venue

1. This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1345 and 31 U.S.C. § 3732(a).

2.  Many of the alleged acts arose in Broward County, in the Southern District of Florida; further, both Defendant corporations are subject to personal jurisdiction, and transact business, in the Southern District of Florida.  Venue is therefore proper in this District under 28 U.S.C. § 1391(b) and (c), and 31 U.S.C. § 3732(a).

**Parties**

3.  Plaintiff, Chris Holden ("Mr. Holden"), is a resident of the United States and a resident of Palm Beach Gardens, Florida; he is bringing this suit in the name of, and on behalf of, the United States of America.

4.  Plaintiff, Maryjane Bunora ("Ms. Bunora"), is a citizen of the United States and a resident of Boca Raton, Florida; she is bringing this suit in the name of, and on behalf of, the United States of America.

5. None of the allegations set forth in this Complaint is based upon a public disclosure of allegations or transactions in a criminal, civil, or administrative hearing; in a congressional, administrative, or General Accounting Office report, hearing, audit, or investigation; or in the news media.

6.  Mr. Holden and Ms. Bunora have direct and independent knowledge, within the meaning of 31 U.S.C. § 3730(e)(4)(B), derived through their employment at the Hollywood, Florida offices of Laboratory Corporation of America ("LCA"), a/k/a National Health Laboratories, Incorporated, of the information on which the allegations set forth in this Complaint are based; and they have voluntarily provided such information to the government prior to filing this Complaint; Mr. Holden was employed by LCA as a Nursing Home Coordinator, and Ms. Bunora was employed as a trained technician, that is, as a phlebotomist.

3

7. Defendant Laboratory Corporation of America ("LCA") is a Delaware corporation with its principle offices located at 358 South Main Street, Burlington, North Carolina. Prior to April 28, 1995, LCA was known as National Health Laboratories, Incorporated ("NHL"), with its principle offices located at 4225 Executive Square, Suite 800, LaJolla, California.

8. Defendant Laboratory Corporation of America Holdings ("LCA Holdings"), is a Delaware corporation with its principle offices located at 358 South Main Street, Burlington, North Carolina. Prior to April 28, 1995, LCA Holdings was known as National Health Laboratories Holdings, Inc., ("NHL Holdings") with its principle offices located at 4225 Executive Square, Suite 800, LaJolla, California. At all times pertinent to this Complaint, LCA Holdings served as the financial holding and management company for LCA, and all acts undertaken by LCA were taken at the direction of, and for the benefit of LCA Holding.

9. At all times pertinent to this Complaint, the business of Defendant LCA was to function as a clinical laboratory. Through a national network of main laboratories, satellite laboratories, patient service centers, and sales ports, Defendant LCA performed testing services used by medical professional in the diagnosis and treatment of disease, including blood testing and urinalysis.

10. At all times pertinent to this Complaint, Defendant LCA maintained main clinical diagnostic laboratories in Hollywood, in the Southern District of Florida, and in Tampa, Florida; and maintained satellite laboratories and patient service centers in Naples, Fort Myers, Hialeah, and West Palm Beach, in the Southern District of Florida; and in Orlando, Jacksonville, and Tallahassee, Florida.

### The Medicare Part B Program

11.  At all times pertinent to this Complaint, the Social Security Act (Title 42, United States Code, Sections 1395 *et seq*.) was in full effect, and had established the Medicare Part B program, which provides medical insurance benefits for individuals aged sixty-five years of age or older, or to disabled individuals, who are entitled to Social Security benefits (hereinafter "Medicare beneficiaries").

12.  At all times pertinent to this Complaint, the Medicare Part B program was administered in the various states by private insurance carriers  which, pursuant to contracts with the United States Department of Health and Human Services ("H&HS"), served as fiscal intermediaries to receive, adjudicate and pay Medicare Part B claims submitted to it by Medicare beneficiaries, physicians or providers;  in Florida, Blue Cross and Blue Shield of Florida, Inc. ("Blue Cross and Blue Shield") served as the fiscal intermediary for the Medicare Part B program.

13.  The Health Care Finance Administration ("HCFA") is an agency of the United States Department of Health and Human Services, and, at all time pertinent to this Complaint, was responsible for the operation, administration, and supervision of the Medicare health insurance program.

14.  At all times pertinent to this Complaint, a health care provider supplying services or supplies covered by Medicare Part B, including laboratory diagnostic testing, would submit a claim for payment to the Medicare fiscal intermediary either on a "Health Insurance Claim" form ("Form HCFA 1500"), or through the Electronic Medium Claims system, which form or system called for the submission of certain information relating to the beneficiary, the type of services or supplies provided, the price of such services or supplies, and a certification by the physician, or other

5

practitioner, as to the medical necessity of rendering such services or supplies.

15.  At all times pertinent to this Complaint, a clinical diagnostic laboratory drawing and collecting specimen samples from Medicare beneficiaries, and performing clinical tests on such specimens, was entitled to receive a fee from the Medicare Part B program for each such test. (Title 42, United States Code, Section 1395 $l$ (h)(1)).

16.  At all times pertinent to this Complaint, a clinical diagnostic laboratory drawing and collecting specimen samples from Medicare beneficiaries, for the purpose of performing clinical tests on such specimens, was entitled to receive a travel allowance from the Medicare Part B program for expenses incurred in the collection of such specimens, with the amount of such travel allowance being determined by HCFA. (Title 42, United States Code Section 1395 $l$ (h)(3)(B))

17.  At all times pertinent to this Complaint, the travel allowance for a clinical diagnostic laboratory submitting claims to the Medicare Part B program for the collection of specimen samples was limited to the "transportation and personnel expenses for trained personnel to travel to the location of the individual to collect the sample[s] . . . ," (Title 42, United States Code Section 1395 $l$ (h)(3)(B)); no travel allowance applied where a technician or other laboratory employee performed a courier service by picking up or delivering specimens samples drawn by a physician or other trained personnel.

18.  At all times pertinent to this Complaint, the travel allowance for a clinical diagnostic laboratory submitting claims to the Medicare Part B program for the drawing and collection of specimen samples was limited to instances where the specimens to be tested were collected from beneficiaries who were either "homebound or [inpatients] in an inpatient facility," (Title 42, United

States Code Section 1395 *l* (h)(3)(B)); such instances did not include the collection of specimens from beneficiaries who were residing in assisted living facilities and who were not homebound.

19.  At all times pertinent to this Complaint, a clinical diagnostic laboratory submitting claims to the Medicare Part B program for the collection of specimen samples was required to prorate the mileage incurred during a single trip, for the collection of such samples, for each Medicare beneficiary for whom a claim was submitted, such that the prorated mileage equaled: (a) the total number of miles incurred  in collecting the samples to be tested, (b) divided by the total number of patients from whom such samples were taken, Medicare beneficiaries and non-beneficiaries alike.  (Title 42, United States Code, Section 1395 *l* (h)(1)).

20.  At all times pertinent to this Complaint, a clinical diagnostic laboratory submitting a claim to the Medicare Part B program for the collection of specimen samples would indicate the prorated mileage being claimed as travel allowance, for all specimen samples taken from one Medicare beneficiary on one occasion, in the following manner: (a) on HCFA Forms 1500, in Field F (days or units); and (b) in EMC transmittals, in the  "number of treatment field," or in such other field as may have been specified by a Medicare fiscal intermediary in any particular state at any particular time.

### LCA a/k/a NHL

21.  At all times pertinent to this Complaint, Defendant LCA hired trained technicians, that is, phlebotomists, to travel to nursing homes and assisted living facility for the purpose of drawing and collecting blood samples, and collecting urine samples, from patients residing in such nursing homes and facilities; LCA hired some phlebotomists as independent contractors, and others as

7

salaried employees.

22.  At all times pertinent to this Complaint, Defendant LCA assigned each of the above described phlebotomists to a specific LCA main laboratory or satellite laboratory, to which the specimen samples collected by that technician would be delivered.

23.  At all times pertinent to this Complaint, the above described phlebotomists, as instructed by Defendant LCA, collected specimen samples from patients residing in specified nursing homes or assisted living facilities, and would drive to such homes and facilities for the purpose of collecting such samples.

24.  At all times pertinent to this Complaint, the above described phlebotomists, as instructed by Defendant LCA, used their personal vehicles to drive to and from the aforesaid nursing homes and facilities; LCA did not reimburse those of the above described phlebotomists who were independent contractors for expenses incurred, and time spent traveling, to and from such nursing homes and facilities.

25.  At all times pertinent to this Complaint, the above described phlebotomists, as instructed by Defendant LCA, "made their rounds" on each workday; that is, such phlebotomists traveled from their personal residences to a nursing home or assisted living facility, and, then, traveled directly to the remaining homes or facilities, without visiting the laboratory before, during, or between trips to these homes or facilities.

26.  At all times pertinent to this Complaint, the above described phlebotomists, as instructed by Defendant LCA, would and did record information about (a) the samples taken, (b) the tests to be performed on those samples, and (c) the round trip mileage between the nursing home or assisted living facility and the LCA laboratory to which the specimens were to be delivered; this information

was recorded, for each patient, on an internal LCA form known as a "Requisition Form."

27. At all times pertinent to this Complaint, delivery of the sample specimens collected, and the Requisition Forms completed, by the above described phlebotomists would be delivered to the LCA laboratory in one of two ways: (a) by the phlebotomist, or (b) by an LCA courier, who would pick up the samples left by the phlebotomist at a designated collection point.

28. At all times pertinent to this Complaint, specimen samples and Requisition forms received at an LCA satellite laboratory would be transferred to an LCA main laboratory for testing and billing.

29. At all times pertinent to this Complaint, an LCA main laboratory would bill insurance carriers using the Requisition Forms it received; that is LCA would use the information recorded on these forms to submit claims to insurance carriers for patients from whom samples were collected, such carriers including Medicare fiscal intermediaries for patients who were Medicare beneficiaries.

30. At all times pertinent to this Complaint, among the items of information included in the above described claims was mileage information which had been recorded on Requisition Forms by phlebotomists.

**The Scheme to Defraud**

31. Defendants LCA and LCA Holdings engaged in a scheme to defraud the United States Department of Health and Human Services, and to file false claims against this department of the United States, in the operation, supervision, and administration of the Medicare Part B health insurance program. The defendants used the following manner and means to carry out this scheme.

9

### A. Recording the Mileage Codes

32. Defendant LCA instructed phlebotomists to record the mileage incurred, for visiting each patient from whom specimen samples were collected, on a Requisition Form for that patient using mileage codes provided by LCA.

33. The mileage codes so provided specified the round trip distance between (a) the LCA main laboratory or satellite laboratory where the specimen samples were to be delivered, and (b) the nursing home or assisted living facility at which a patient resided.

34. For each such patient, Defendant LCA instructed phlebotomists to record the mileage code without prorating the code, and without prorating the mileage represented by that code.

35. For each such patient, Defendant LCA instructed phlebotomist to record the mileage code without regard to (a) the actual mileage traveled by the phlebotomist, (b) the location from where the phlebotomist commenced his or her travel when visiting a nursing home or assisted living facility; and (c) the location at which the phlebotomist terminated his or her travel when delivering specimen samples to an LCA laboratory or to a designated collection point for pick up by an LCA courier.

### B. The Billing Procedure

36. At all times pertinent to this Complaint, Defendant LCA produced claims to be sent to Medicare, for the collection of, analysis of, and travel allowance for, specimen samples taken from Medicare beneficiaries, using the information recorded by phlebotomists on the aforesaid Requisition Forms.

37. At all times pertinent to this Complaint, Defendant LCA generated the above described claims at its main laboratories, and submitted these claims to the Medicare program from these

laboratories. These laboratories were located in places which included (but were not limited to) the following cities and states: (a) Hollywood, in the Southern District of Florida; (b) Tampa, Florida; (c) Herndon, Virginia; (d) Marietta, Georgia; (e) Winston Salem, North Carolina; (f) Chicago, Illinois; (g) Phoenix, Arizona; (h) San Diego, California; (i) Denver, Colorado; (j) Louisville, Kentucky; (k) Detroit, Michigan; (l) Cranford, New Jersey; (m) Uniondale, New York; (n) Nashville, Tennessee; (o) Dallas, Texas; (p) Houston, Texas; (q) San Antonio, Texas; and (r) Seattle, Washington.

38. At all times pertinent to this Complaint, Defendant LCA indicated the specific mileage being claimed, as travel allowance for specimen samples taken from each Medicare beneficiary, in either HCFA Forms 1500 or EMC transmittals, in the fields required by HCFA and the Medicare fiscal intermediaries.

39. At all times pertinent to this Complaint, by indicating the aforesaid mileage in the aforesaid manner, LCA represented to H&HS and to the Medicare fiscal intermediaries that the requirements for payment of the travel allowance for each such claim had been met.

*C. The False Claims*

40. At all times pertinent to this Complaint, Defendant LCA knowingly prepared and submitted material false claims to H&HS for the collection of, analysis of, and travel allowance for, specimen samples taken from Medicare beneficiaries on specified dates, in that:

(a) LCA would and did falsely state, as the prorated mileage incurred for each Medicare beneficiary, the full round trip mileage between (i) the nursing home or assisted living facility wherein said beneficiary resided and (ii) the LCA laboratory to which the specimen samples were delivered; whereas, in truth and in fact, as the Defendant then knew, such round trip mileage had not

11

samples had been drawn;

(b) LCA would and did falsely state, as the prorated mileage incurred for each Medicare beneficiary residing at a nursing home or assisted living facility, the full round trip mileage between that nursing home or facility and the LCA laboratory to which the specimen sample was delivered; whereas in truth and fact, as the Defendant then knew, such round trip mileage was not incurred by the phlebotomist who collected said samples, in that:

> (i)  said phlebotomist traveled among several nursing homes and facilities, during which time this technician did not arrive or stop at the LCA laboratory;

> (ii)  said phlebotomist drove to the first of the aforesaid nursing  homes or facilities starting from this technician's home, and not starting from the laboratory; and

> (ii) said phlebotomist sometimes did not deliver the specimens collected to the LCA laboratory, but, instead, to a designated collection point for pick up by an LCA courier;

(c) LCA would and did falsely state that, for each Medicare beneficiary for whom it claimed a travel allowance, said beneficiary either  (i) resided at a nursing home, or (ii) resided at an assisted living facility and was homebound at such facility; whereas, in truth and in fact, as the Defendant then knew, some of these beneficiaries (i) resided at assisted living facilities, but (ii) were not homebound at such facilities; and

(d) LCA would and did falsely state that, for each Medicare beneficiary for whom it claimed a travel allowance, LCA had incurred travel expenses for the mileage and personal time of the phlebotomist who had traveled to the nursing home or assisted living facility, to collect the specimen samples; whereas, in truth and in fact, as the Defendant well knew, for those phlebotomists employed by LCA as independent contractors, LCA had incurred no such expenses in that these phlebotomists who collected such samples incurred such expenses personally.

## The Charge

41. Beginning in 1987, and continuing until on or about the date of this Complaint, Defendant Laboratory Corporation of America, a/k/a National Health Laboratories Incorporated, and Defendant Laboratory Corporation of America Holdings, a/k/a and National Health Laboratories Holdings, Inc., knowingly presented, or caused to be presented, to the United States Government for payment or approval, false or fraudulent claims, these claims being the above described Medicare reimbursement requests submitted on HCFA Forms 1500 or transmitted through the Electronic Medium Claim system; each such request, for each Medicare beneficiary, being in violation of 28 U.S.C. § 3729(a)(1).

42. Beginning in 1987, and continuing until on or about the date of this Complaint, Defendant Laboratory Corporation of America, a/k/a National Health Laboratories Incorporated, and Defendant Laboratory Corporation of America Holdings, a/k/a and National Health Laboratories Holdings, Inc., knowingly made or used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved by the United States Government, these records and statements being the above described Requisition Forms; each such instance being in violation of 28 U.S.C. § 3729(a)(2).

43. As a result of the conduct of the Defendant corporations, as described in this Complaint, the United Sates suffered actual damages.

## Request for Relief

The Plaintiffs, Mr. Holden and Ms. Bunora, acting on their own behalf and in the name of the United States, hereby demand and seek that judgment be entered in favor of the United States, and against Defendants Laboratory Corporation of America, a/k/a National Health Laboratories Incorporated, and the Laboratory Corporation of America Holdings, a/k/a and National Health Laboratories Holdings, Inc., as follows:

1. For treble damages incurred by the United States;

2. For civil penalties of ten thousand dollars ($10,000) for each false claim submitted to the United States, in the form of Medicare claims submitted on a HCFA Form 1500 or through the Electronic Medium Claims system;

3. For civil penalties of ten thousand dollars ($10,000) for each false record, in the form of Requisition Forms, made or used to get false claims paid or approved;

4. For interest on: the above treble damages, from the date on which the damages were incurred; and on the above civil penalties, from the date on which this Complaint is served upon the Defendants;

5. For all costs and expenses of this civil action; and

6. For such other and further relief as the Court deems just and equitable.

14

In addition, the Plaintiffs, Mr. Holden and Ms. Bunora, acting on their own behalf, demand and seek that an award be made in their favor as follows:

1. For twenty-five percent (25%) of the proceeds collected by the United States, if the United States intervenes in and conducts this action; or for thirty percent (30%) of such proceeds if the United States does not intervene;

2. For an amount for reasonable expenses necessarily incurred by Mr. Holden and Ms. Bunora in the prosecution of this action;

3. For all reasonable expenses incurred by Mr. Holden and Ms. Bunora in relation with these proceedings, plus all reasonable attorney's fees and costs; and

4. For such other and further relief to which Mr. Holden and Ms. Bunora may show themselves justly entitled.

**Demand for Jury Trial**

Plaintiff hereby demands that this matter be tried before a jury.

Respectfully submitted,

By: _Andrew Grosso_

ANDREW GROSSO
2300 N Street, N.W.
Suite 600
Washington, D.C.  20037
Telephone: (202) 663-9041
Facsimile:  (202) 663-9042
Florida Bar No. 998583

_Antonia Hulme_

ANTONIA HULME
HULME & CHAPMAN, P.A.
1201 U.S. Highway One
Suite 36
North Palm Beach, Florida  33408
Telephone: (407) 625-8787
Facsimile:  (407) 625-6775
Florida Bar No. 0709352

Attorneys for Chris Holden
and Maryjane Bunora

Dated _3 - 13 - 96_

16

Citation
31 USCA s 3730                    FOUND DOCUMENT
31 U.S.C.A. s 3730

Database
USCA

Mode
Page

UNITED STATES CODE ANNOTATED
TITLE 31.  MONEY AND FINANCE
SUBTITLE III--FINANCIAL MANAGEMENT
CHAPTER 37--CLAIMS
SUBCHAPTER III--CLAIMS AGAINST THE UNITED STATES GOVERNMENT
Copr. (C) West 1996.  All rights reserved.
Current through P.L. 104-98, approved 1-16-96

s 3730. Civil actions for false claims

 (a) Responsibilities of the attorney general.--The Attorney General diligently
shall investigate a violation under section 3729.  If the Attorney General
finds that a person has violated or is violating section 3729, the Attorney
General may bring a civil action under this section against the person.
 (b) Actions by private persons.--(1) A person may bring a civil action for a
violation of section 3729 for the person and for the United States Government.
The action shall be brought in the name of the Government.  The action may be
dismissed only if the court and the Attorney General give written consent to
the dismissal and their reasons for consenting.
 (2) A copy of the complaint and written disclosure of substantially all
material evidence and information the person possesses shall be served on the
Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil
Procedure.  The complaint shall be filed in camera, shall remain under seal for
at least 60 days, and shall not be served on the defendant until the court so
orders.  The Government may elect to intervene and proceed with the action
within 60 days after it receives both the complaint and the material evidence
and information.
 (3) The Government may, for good cause shown, move the court for extensions of
the time during which the complaint remains under seal under paragraph (2).
Any such motions may be supported by affidavits or other submissions in
camera.  The defendant shall not be required to respond to any complaint filed
under this section until 20 days after the complaint is unsealed and served
upon the defendant pursuant to Rule 4 of the Federal Rules of Civil
Procedure.
 (4) Before the expiration of the 60-day period or any extensions obtained
under paragraph (3), the Government shall--
  (A) proceed with the action, in which case the action shall be conducted by
 the Government;  or
  (B) notify the court that it declines to take over the action, in which case
 the person bringing the action shall have the right to conduct the action.
 (5) When a person brings an action under this subsection, no person other than
the Government may intervene or bring a related action based on the facts
underlying the pending action.
 (c) Rights of the parties to Qui Tam actions.--(1) If the Government proceeds
with the action, it shall have the primary responsibility for prosecuting the
action, and shall not be bound by an act of the person bringing the action.
Such person shall have the right to continue as a party to the action, subject
to the limitations set forth in paragraph (2).

                    Copr. (C) West 1996 No claim to orig. U.S. govt. works

(2)(A) The Government may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion.

(B) The Government may settle the action with the defendant notwithstanding the objections of the person initiating the action if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances.  Upon a showing of good cause, such hearing may be held in camera.

(C) Upon a showing by the Government that unrestricted participation during the course of the litigation by the person initiating the action would interfere with or unduly delay the Government's prosecution of the case, or would be repetitious, irrelevant, or for purposes of harassment, the court may, in its discretion, impose limitations on the person's participation, such as--

(i) limiting the number of witnesses the person may call;
(ii) limiting the length of the testimony of such witnesses;
(iii) limiting the person's cross-examination of witnesses;  or
(iv) otherwise limiting the participation by the person in the litigation.

(D) Upon a showing by the defendant that unrestricted participation during the course of the litigation by the person initiating the action would be for purposes of harassment or would cause the defendant undue burden or unnecessary expense, the court may limit the participation by the person in the litigation.

(3) If the Government elects not to proceed with the action, the person who initiated the action shall have the right to conduct the action.   If the Government so requests, it shall be served with copies of all pleadings filed in the action and shall be supplied with copies of all deposition transcripts (at the Government's expense).   When a person proceeds with the action, the court, without limiting the status and rights of the person initiating the action, may nevertheless permit the Government to intervene at a later date upon a showing of good cause.

(4) Whether or not the Government proceeds with the action, upon a showing by the Government that certain actions of discovery by the person initiating the action would interfere with the Government's investigation or prosecution of a criminal or civil matter arising out of the same facts, the court may stay such discovery for a period of not more than 60 days.  Such a showing shall be conducted in camera.  The court may extend the 60-day period upon a further showing in camera that the Government has pursued the criminal or civil investigation or proceedings with reasonable diligence and any proposed discovery in the civil action will interfere with the ongoing criminal or civil investigation or proceedings.

(5) Notwithstanding subsection (b), the Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty.  If any such alternate remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section.  Any finding of fact or conclusion of law made in such other proceeding that has become final shall be

Copr. (C) West 1996 No claim to orig. U.S. govt. works

31 USCA s 3730                                                              PAGE    3
TEXT (c) (4)

conclusive on all parties to an action under this section.  For purposes of the
preceding sentence, a finding or conclusion is final if it has been finally
determined on appeal to the appropriate court of the United States, if all time
for filing such an appeal with respect to the finding or conclusion has
expired, or if the finding or conclusion is not subject to judicial review.
 (d) Award to Qui Tam plaintiff.--(1) If the Government proceeds with an action
brought by a person under subsection (b), such person shall, subject to the
second sentence of this paragraph, receive at least 15 percent but not more
than 25 percent of the proceeds of the action or settlement of the claim,
depending upon the extent to which the person substantially contributed to the
prosecution of the action.  Where the action is one which the court finds to be
based primarily on disclosures of specific information (other than information
provided by the person bringing the action) relating to allegations or
transactions in a criminal, civil, or administrative hearing, in a
congressional, administrative, or Government Accounting Office report, hearing,
audit, or investigation, or from the news media, the court may award such sums
as it considers appropriate, but in no case more than 10 percent of the
proceeds, taking into account the significance of the information and the role
of the person bringing the action in advancing the case to litigation.  Any
payment to a person under the first or second sentence of this paragraph shall
be made from the proceeds.  Any such person shall also receive an amount for
reasonable expenses which the court finds to have been necessarily incurred,
plus reasonable attorneys' fees and costs.  All such expenses, fees, and costs
shall be awarded against the defendant.
 (2) If the Government does not proceed with an action under this section, the
person bringing the action or settling the claim shall receive an amount which
the court decides is reasonable for collecting the civil penalty and damages.
The amount shall be not less than 25 percent and not more than 30 percent of
the proceeds of the action or settlement and shall be paid out of such
proceeds.  Such person shall also receive an amount for reasonable expenses
which the court finds to have been necessarily incurred, plus reasonable
attorneys' fees and costs.  All such expenses, fees, and costs shall be awarded
against the defendant.
 (3) Whether or not the Government proceeds with the action, if the court finds
that the action was brought by a person who planned and initiated the violation
of section 3729 upon which the action was brought, then the court may, to the
extent the court considers appropriate, reduce the share of the proceeds of the
action which the person would otherwise receive under paragraph (1) or (2) of
this subsection, taking into account the role of that person in advancing the
case to litigation and any relevant circumstances pertaining to the violation.
If the person bringing the action is convicted of criminal conduct arising from
his or her role in the violation of section 3729, that person shall be
dismissed from the civil action and shall not receive any share of the proceeds
of the action.  Such dismissal shall not prejudice the right of the United
States to continue the action, represented by the Department of Justice.
 (4) If the Government does not proceed with the action and the person bringing
the action conducts the action, the court may award to the defendant its
reasonable attorneys' fees and expenses if the defendant prevails in the action
and the court finds that the claim of the person bringing the action was
                      Copr. (C) West 1996 No claim to orig. U.S. govt. works

31 USCA s 3730                                                           PAGE    4
TEXT (d) (3)

clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment.

(e) Certain actions barred.--(1) No court shall have jurisdiction over an action brought by a former or present member of the armed forces under subsection (b) of this section against a member of the armed forces arising out of such person's service in the armed forces.

(2)(A) No court shall have jurisdiction over an action brought under subsection (b) against a Member of Congress, a member of the judiciary, or a senior executive branch official if the action is based on evidence or information known to the Government when the action was brought.

(B) For purposes of this paragraph, "senior executive branch official" means any officer or employee listed in paragraphs (1) through (8) of section 101(f) of the Ethics in Government Act of 1978 (5 U.S.C.App.).

(3) In no event may a person bring an action under subsection (b) which is based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party.

(4)(A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

(B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

(f) Government not liable for certain expenses.--The Government is not liable for expenses which a person incurs in bringing an action under this section.

(g) Fees and expenses to prevailing defendant.--In civil actions brought under this section by the United States, the provisions of section 2412(d) of title 28 shall apply.

(h) Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.  Such relief shall include reinstatement with the same seniority status such employee would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.  An employee may bring an action in the appropriate district court of the United States for the relief provided in this subsection.

CREDIT(S)

Copr. (C) West 1996 No claim to orig. U.S. govt. works

# CIVIL COVER SHEET   96-6272   CIV-ZLOCH

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| United States of America, ex rel. Chris Holden and Maryjane Bunora, | Laboratory Corporation of America, a/k/a National Health Laboratories Incorporated, and Laboratory Corporation of America Holdings, a/k/a National Health Laboratories Holdings, Inc. |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____ (EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____ (IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

~ NORTH 6272 ZLOCH/SELTZER

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

See attachment

ATTORNEYS (IF KNOWN)

(d) CIRCLE COUNTY WHERE ACTION AROSE:
DADE, MONROE, (BROWARD) PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

## I. BASIS OF JURISDICTION (PLACE AN X ONE BOX ONLY)

- [ ] 1. U.S. Government Plaintiff
- [ ] 2. U.S. Government Defendant
- [ ] 3. Federal Question (U.S. Government Not a Party)
- [ ] 4. Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Case Only)

(PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business in This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business in Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## II. CAUSE OF ACTION

(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.) 31 USC 3730(b)(2)

Qui tam suit under the False Claims Act wherein defendants submitted false claims to Medicare for reimbursement

## IVa. _____ days estimated (for both sides) to try entire case

## V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| A CONTRACT | A TORTS | B FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUS |
|---|---|---|---|---|
| [ ] 110 Insurance | PERSONAL INJURY | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 States Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury–Med Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury–Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | A PROPERTY RIGHTS | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | [ ] 820 Copyrights | [ ] 450 Commerce/ICC Rates/etc. |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | PERSONAL PROPERTY | [ ] 640 R.R. & Truck | [ ] 830 Patent | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 370 Other Fraud | [ ] 650 Airline Regs | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl Veterans) B | [ ] 345 Marine Product Liability | [ ] 371 Truth in Lending B | [ ] 660 Occupational Safety/Health | B SOCIAL SECURITY | [ ] 810 Selective Service |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits B | [ ] 350 Motor Vehicle | [ ] 380 Other Personnel Property Damage | [ ] 690 Other | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/Exchange |
| [ ] 160 Stockholder's Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 385 Property Damage Product Liability | A LABOR | [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | | [ ] 710 Fair Labor Standards Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 195 Contract Product Liability | | | [ ] 720 Labor/Management Relations B | [ ] 864 SSID Title XVI | [ ] 892 Economic Stabilization Act |
| A REAL PROPERTY | A CIVIL RIGHTS | B PRISONER PETITIONS | [ ] 730 Labor/Management Reporting & Disclosure Act | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence Habeas Corpus | [ ] 740 Railway Labor Act | A FEDERAL TAX SUITS | [ ] 894 Energy Allocation Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | [ ] 530 General * | [ ] 790 Other Labor Litigation | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/Accommodations | [ ] 535 Death Penalty | [ ] 791 Employee Ret. Inc. Security Act B | [ ] 871 IRS–Third Party 26 USC 7609 | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 540 Mandamus & Other * | | | [ ] 950 Constitutionality of State Statutes |
| [ ] 245 Tort Product Liability | [ ] 440 Other Civil Rights | [ ] 550 Civil Rights * A or B | | | [ ] 890 Other Statutory Actions * A or B |
| [ ] 290 All Other Real Property | | | | | |

## VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)

- [X] 1. Original Proceeding
- [ ] 2. Removed From State Court
- [ ] 3. Remanded from Appellate Court
- [ ] 4. Refiled
- [ ] 5. Transferred from another district (Specify)
- [ ] 6. Multidistrict Litigation
- [ ] 7. Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT

CHECK IF THIS IS A CLASS ACTION [ ] UNDER F.R.C.P. 23

DEMAND $ Excess of $25 million

Check YES only if demanded in complaint
JURY DEMAND: [X] YES [ ] NO

## VIII. RELATED CASE(S) IF ANY

(See Instructions):

JUDGE _____ DOCKET NUMBER _____

DATE
March 13, 1996

SIGNATURE OF ATTORNEY OF RECORD
Antonia Cluime

UNITED STATES DISTRICT COURT
S/F I-2
REV. 9/94

FOR OFFICE USE ONLY: Receipt No. 509150

Date Paid: 03-13-96

Amount $120.00

M/fp: _____

# CIVIL COVER SHEET

96-6272 CIV-ZLOCH

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS

United States of America, ex rel. Chris Holden and Maryjane Bunora,

## DEFENDANTS

Laboratory Corporation of America, a/k/a National Health Laboratories Incorporated, and Laboratory Corporation of America Holdings, a/k/a National Health Laboratories Holdings, Inc.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

A-NORTH 6272 ZLOCH/SELTZER

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

See attachment

ATTORNEYS (IF KNOWN)

MAGISTRATE SELTZER

**(d) CIRCLE COUNTY WHERE ACTION AROSE:**
DADE, MONROE, (BROWARD), PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN X ONE BOX ONLY)

- [X] 1. U.S. Government Plaintiff
- [ ] 2. U.S. Government Defendant
- [ ] 3. Federal Question (U.S. Government Not a Party)
- [ ] 4. Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Case Only) (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business in This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business in Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.) 31 USC 3730(b)(2)

Qui tam suit under the False Claims Act wherein defendants submitted false claims to Medicare for reimbursement

**IVa.** _____ days estimated (for both sides) to try entire case

## V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| A CONTRACT | A TORTS PERSONAL INJURY | B FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUS |
|---|---|---|---|---|
| [ ] 110 Insurance | [ ] 310 Airplane | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 States Reapportionment |
| [ ] 120 Marine | [ ] 315 Airplane Product Liability | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 320 Assault, Libel & Slander | [ ] 625 Drug Related Seizure of Property 21 USC 881 | A PROPERTY RIGHTS | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 330 Federal Employers' Liability | [ ] 630 Liquor Laws | [ ] 820 Copyrights | [ ] 450 Commerce/ICC Rates/etc. B |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 340 Marine | [ ] 640 R.R. & Truck | [ ] 830 Patent | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 345 Marine Product Liability | [ ] 650 Airline Regs | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl Veterans) B | [ ] 350 Motor Vehicle | [ ] 660 Occupational Safety/Health | B SOCIAL SECURITY | [ ] 810 Selective Service |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits B | [ ] 355 Motor Vehicle Product Liability | [ ] 690 Other | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/Exchange |
| [ ] 160 Stockholder's Suits | [ ] 360 Other Personal Injury | A LABOR | [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge 12USC3410 |
| [ ] 190 Other Contract | PERSONAL INJURY | [ ] 710 Fair Labor Standards Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury-Med Malpractice | [ ] 720 Labor Management Relations B | [ ] 864 SSID Title XVI | [ ] 892 Economic Stabilization Act |
| | [ ] 365 Personal Injury-Product Liability | [ ] 730 Labor Management Reporting & Disclosure Act | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 740 Railway Labor Act | A FEDERAL TAX SUITS | [ ] 894 Energy Allocation Act |
| A REAL PROPERTY | PERSONAL PROPERTY | [ ] 790 Other Labor Litigation | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 895 Freedom of Information Act |
| [ ] 210 Land Condemnation | [ ] 370 Other Fraud | [ ] 791 Employee Ret. Inc. Security Act B | [ ] 871 IRS-Third Party 26 USC 7609 | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 220 Foreclosure B | [ ] 371 Truth in Lending B | | | [ ] 950 Constitutionality of State Statutes |
| [ ] 230 Rent Lease & Ejectment | [ ] 380 Other Personal Property Damage | | | [X] 890 Other Statutory Actions * * A or B |
| [ ] 240 Torts to Land | [ ] 385 Property Damage Product Liability | | | |
| [ ] 245 Tort Product Liability | | | | |
| [ ] 290 All Other Real Property | | | | |
| A CIVIL RIGHTS | B PRISONER PETITIONS | | | |
| [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence Habeas Corpus | | | |
| [ ] 442 Employment | [ ] 530 General * | | | |
| [ ] 443 Housing/Accommodations | [ ] 535 Death Penalty | | | |
| [ ] 444 Welfare | [ ] 540 Mandamus & Other * | | | |
| [ ] 440 Other Civil Rights | [ ] 550 Civil Rights * A or B | | | |

## VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)

- [X] 1. Original Proceeding
- [ ] 2. Removed From State Court
- [ ] 3. Remanded from Appellate Court
- [ ] 4. Refiled
- [ ] 5. Transferred from another district (Specify)
- [ ] 6. Multidistrict Litigation
- [ ] 7. Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT

CHECK IF THIS IS A [ ] CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ Excess of $25 million

Check YES only if demanded in complaint
JURY DEMAND: [X] YES [ ] NO

## VIII. RELATED CASE(S) IF ANY (See Instructions):

JUDGE _____ DOCKET NUMBER _____

DATE
March 13, 1996

SIGNATURE OF ATTORNEY OF RECORD
Eufonia Hulme

FOR OFFICE USE ONLY: Receipt No. 509150

Date Paid: 03-13-96

Amount: $120.00

M/fp: _____

ATTACHMENT - ATTORNEYS

ANDREW GROSSO
2300 N Street, N.W.
Suite 600
Washington, D.C. 20037
Telephone: (202) 663-9041
Facsimile: (202) 663-9042
Florida Bar No. 998583

ANTONIA HULME
HULME & CHAPMAN, P.A.
1201 U.S. Highway One, Suite 36
North Palm Beach, Florida 33408
Telephone: (407) 625-8787
Facsimile: (407) 625-6775
Florida Bar No. 0709352